UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

In the Matter of NATIONAL
MAINTENANCE & REPAIR, INC., *as
owner pro hac vice of spudded crane barge
BB-1 for exoneration from or limitation of
liability*,

Case No. 09-cv-671

        Plaintiff.

## MEMORANDUM AND ORDER

This matter comes before the Court on Shannon Blair and Robert Vandygriff's Motions

to Modify Security and Vacate Injunction (Docs. 14, 23).

On September 11, 2009, the Court ordered that the sum of $830,000, which represents

the appraised value of Plaintiff National Maintenance & Repair, Inc.'s (hereinafter "National

Maintenance") barge BB-1, with interest at the rate of six percent (6%) per annum from the date

of National Maintenance's Letter of Undertaking (Doc. 2, Exhibit 3) shall stand as security in

these proceedings unless otherwise contested.  (Doc. 9).  In addition, the Court enjoined all

claims and proceedings against National Maintenance with respect to an incident involving BB-1

on July 20, 2009, except in this Court.   Now, alleging that the letter of undertaking does not

represent sufficient security, Blair and Vandygriff request that National Maintenance transfer

BB-1 to a trustee or post a corporate surety bond or cash, thereby necessitating vacation of the

Court's injunction.

As a condition precedent to enjoying the benefits of the Limitation of Liability Act,

"The owner [of a vessel] (a) shall deposit with the court, for the benefit of the
claimants, a sum equal to the amount or value of the owner's interest the vessel
and pending freight, or *approved security therefor* . . . ; or (b) at the owner's
option shall transfer to a trustee to be appointed by the court, for the benefit of
claimants, the owner's interest in the vessel and pending freight . . . ."

Fed. R. Civ. P. Supp. R. F(1) (emphasis added); 46 U.S.C. § 30511(b)(1),(2) (2006).  Put another way, a vessel owner may fulfill his obligations under the Limitation of Liability Act in one of three ways: 1) physically surrendering the vessel and pending freight to a trustee; 2) depositing cash equal to the amount of the owner's interest in the vessel and pending freight with the court; or 3) posting approved security.  *N.Y. Marine Managers, Inc. v. Helena Marine Serv.*, 758 F.2d 313, 317 (8th Cir. 1985).  In reality, "the posting of 'approved security' is by far the most common procedure."  *In re Matter of Compania Naviera Marasia S.A., Atlantico*, 466 F. Supp. 900, 901 (S.D.N.Y. 1979).  "Approved security" includes letters of undertaking, as "it has been the practice for many years in the maritime industry to accept letters of undertaking given by underwriters, domestic or foreign, in order to avoid the detention of vessels and the expense of posting security in other forms."  *Id*. at 902; *In re S. Ill. Riverboat Casino Cruises, Inc.*, Civil No. 01-4040-GPM (S.D. Ill. Feb. 3, 2001).

Here, the Court is not required to order transfer of BB-1or posting of a corporate surety bond or cash, and it sees no reason to do so in light of National Maintenance's letter of undertaking.  First, as National Maintenance correctly points out, Blair and Vandygriff have yet to file their claims in this matter; as such, no interests require protection under Rule F or § 30511.  However, assuming *arguendo* that the interests of *potential* claimants should be given consideration, several factors demonstrate the letter's sufficiency as security.  National Maintenance appears to be insured for an amount exceeding liability under Rule F or § 30511.  Also, National Maintenance is an Illinois corporation, and BB-1 is currently stationed in Hartford, Illinois, which should further alleviate the concerns of Blair and Vandygriff.

Blair and Vandygriff's reliance on *In re East Towing Co.*, 266 U.S. 355 (1924), appears misguided, especially considering subsequent amendments to the Limitation of Liability Act.  In

addition, Blair and Vandygriff misconstrue a prior decision of the Southern District of Illinois to mean that "this District has previously ruled that security [in Limitation of Liability actions] must be in either cash or an approved corporate surety bond." (Doc. 23, p. 1) (emphasis added). Rather, in said decision, Judge Murphy held just the opposite, stating that "this Court has discretion to fashion appropriate security in a case and that, in some instances, a letter of undertaking may be proper security." *S. Ill. Riverboat Casino, supra*, Doc. 83, p. 2. Even though Judge Murphy did not ultimately accept a letter of undertaking as sufficient security, his decision is not binding on this Court. Further, it is easy to see the distinction between the facts before him, where over forty individuals filed claims against a vessel valued at more than $12,000,000, and those currently before the Court, where only two potential claimants are currently known and National Maintenance's interest in BB-1 does not exceed $1,000,000.

Of course, the Court's refusal to modify National Maintenance's security dictates that the injunction of September 11, 2009, remains in effect.

For the foregoing reasons, the Court **DENIES** the instant motions (Docs. 14, 23).

**IT IS SO ORDERED.**
**DATED: October 27, 2009**

<u>s/ J. Phil Gilbert</u>
**J. PHIL GILBERT**
**DISTRICT JUDGE**